STATE OF NEBRASKA, APPELLEE, v. WILLIAM E. MICEK,
APPELLANT.
STATE OF NEBRASKA, APPELLEE, v. GROVER C. ROBINSON,
APPELLANT.
227 N. W. 2d 409

Filed March 27, 1975. Nos. 39695, 39699.

380

J. William Gallup, for appellants.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Both Grover C. Robinson and William E. Micek appeal their convictions for burglary and for possession of burglary tools. The defendants assign as error: (1) The refusal to sever their trials; (2) overruling their motions to suppress evidence; (3) overruling their motions for mistrials; (4) allowing the testimony of expert witnesses where they had not been furnished reports concerning scientific tests and results; (5) giving instruction No. 17; (6) overruling their motion to dismiss; (7) receiving certified copies of judgments of conviction in evidence at a hearing on the charges of being habitual criminals without proper identification; and (8) overruling their motion to dismiss the habitual criminal charges. We affirm.

Defendants have not argued assignments (3), (4), or (5) in their brief, and (6) is only argued so far as it is incidental to the sustaining of defendants' motions to suppress evidence. Errors assigned but not argued will not be considered by this court. Linder v. State (1953), 156 Neb. 504, 56 N. W. 2d 734.

About 1:14 a.m., on the morning of February 4, 1974, deputy sheriff Wintle, who was in charge of the night shift, received a call to go to a home in Irvington, Nebraska. He arrived there about 1:17 a.m. The complainant pointed out a Dodge automobile parked just south of his home which he had never seen in the vicinity before. The car was unoccupied. On investigation the deputy sheriff determined that the grill was warm, indicating that the car had been driven recently. He checked the registration and determined that it was

registered to a Shirley M. Micek, 4741 South 78th Avenue. He had recently been given the name of William Micek as a possible burglary suspect, because of his association with a William O'Kelly, a known burglar. He left the car and checked the Irvington area, but did not discover anything unusual.

Wintle was called back to the complainant's residence about 2:05 a.m. He was given the description of a man who had been around the car which was now gone. He was told that it appeared as though the man had taken off the rear license plate. Wintle immediately called the sheriff's office and suggested that the car be stopped and a routine check be made on the occupants. Another deputy sheriff, Tramp, observed and stopped the car at 79th and L Streets in Omaha at 2:18 a.m. He notified Wintle, who immediately started for that point and arrived at 2:33 a.m.

As Tramp was walking up to the car he observed there were three occupants and that one of them, who was in the back seat, threw his leg over a white cloth. He noticed this cloth had a red spot or stain. There appeared to be something under it, with a plastic cover. The defendant Micek, in the presence of the other two occupants, told Tramp they had been playing cards at 33rd and Burt Streets, which is 8 to 10 miles from Irvington. All three of the occupants produced driver's licenses which appeared to be in order. Tramp gave their names to the radio operator to check to see if there were any warrants outstanding on any of the individuals, and proceeded to make out field cards. He was completing the cards when Wintle arrived.

Wintle first visited with Micek at his cruiser. Micek told him they had been playing cards at 33rd and Burt Streets, which was Robinson's home. He said he had not been at Irvington, and claimed that the car had been at 33rd and Burt Streets all night. Wintle then went to the Dodge and asked Robinson, who had gotten in behind the wheel, to step out so he could visit with him

away from the others. When the door was opened he could see a parcel of meat wrapped in clear plastic. It appeared to be covered by a white cloth, or butcher's apron, with a red stain on it. Robinson's story to Wintle was the same as Micek's.

When Wintle observed the Dodge at 79th and L Streets, it appeared to be riding lower than when he first observed it in Irvington. The license on the Dodge was the same as the one he observed at Irvington. At 2:42 a.m., he radioed back for two cars in the north area to check breakins in the Irvington area, specifically checking businesses handling large cuts of meat. At 2:44 a.m., he was advised that the Steam Shed, a restaurant in Irvington, had been broken into. He then advised the three occupants of the car that they were under arrest. This was approximately 2:45 a.m. The occupants were searched and handcuffed. There were three cuts of meat under the cloth. When the trunk was opened it was found to be full of various cuts of meat on racks similar to racks on which it would be stored in a place of business.

Defendants argue that when one attorney represents two codefendants, conflict of interest which denies one or both defendants effective assistance of counsel is a distinct possibility and when such a conflict exists a conviction cannot stand. Both Micek and Robinson had alibi defenses supported by different witnesses. Shortly before the trial, Micek's alibi vanished when his witness became unavailable or refused to testify. Defendants then argue that after Micek lost his alibi defense, Robinson's defense then centered on accusing Micek of performing the burglary since the stolen goods were found in Micek's car. This created an obvious conflict. Quoting defendants' brief: "How could defense counsel argue to the jury that his one client was an innocent victim of accepting a ride home with a man who had just committed a burglary and who just happened to be his other client? Such an argument would certainly have

deprived appellant, Micek, of effective assistance of counsel. By the same token, failure to make such an argument would have deprived Robinson of the effective assistance of counsel."

Defendants had several weeks to prepare for trial. The jury had been empaneled and sworn April 19, 1974. The motion for severance was made before trial began on the morning of April 22, 1974. Even though defendants were to waive their defense of double jeopardy, it would require a very strong showing of probable prejudice to show an abuse of discretion in refusing severance at that stage. The charges against the two defendants were properly joinable and the record discloses no factors on which an allegation of abuse of discretion can be based. The trial court did not abuse its discretion in denying severance herein.

The ruling of the trial court upon a severance of criminal prosecutions properly joined in a single indictment, information, or complaint will not be disturbed on appeal in the absence of an abuse of discretion. State v. Bazer (1973), 189 Neb. 711, 204 N. W. 2d 799.

Defendants' main defense is predicated on their contention that the stopping of the Micek car at 79th and L Streets constituted an illegal arrest because no probable cause existed for their arrest at the time of their original detention. We find that probable cause existed for the stopping, temporary detention, and subsequent arrest of the defendants. A private citizen had reported the parking of a strange vehicle in his neighborhood at an early hour in the morning. The vehicle was warm, indicating that it had been driven recently. It was unoccupied and appeared to be in operable condition. Further, the same private citizen reporting that he had observed a stranger doing something at the back of the car, possibly changing a license plate, was an additional suspicious circumstance. We have no question but that on the facts known to officer Wintle he was fully justified in requesting that the car be stopped and the oc-

cupants identified. As we said in State v. Carpenter (1967), 181 Neb. 639, 150 N. W. 2d 129: "It is only by alertness to proper occasions for prompt inquiries and investigations that effective prevention of crime and enforcement of law is possible.

"The existence of probable cause must be determined by a practical and not any technical standard." See, also, Adams v. Williams (1972), 407 U. S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612, wherein Mr. Justice Rehnquist said: "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. See id., at 23. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

When officer Tramp stopped the car at 2:18 a.m., he immediately advised his superior, officer Wintle. As Tramp approached the car, he observed defendant Robinson throw his leg over a white cloth as though to cover it. He noticed that the white cloth had a red stain which conceivably could be a blood stain. There appeared to be something under it with a plastic cover.

Officer Wintle arrived on the scene before Tramp had completed his investigation. He immediately recognized the car as the one he had observed an hour earlier in Irvington. Micek, the car's driver, denied that he had been anywhere near the Irvington area. When Robinson was asked to get out of the car so that Wintle could check his story apart from the others, a parcel of meat was observed wrapped in clear plastic under the white cloth with the stain. The circumstances were sufficient for a temporary detention. Within 2 minutes officer Wintle had the information that a business hand-

ling meats in the Irvington area had been burglarized. The interference with defendants' freedom of movement was lawful and the officers geared their action to the state of their knowledge. As we stated in State v. Carpenter, *supra*: "It is not possible to ignore the fact that police officers are charged with the duty to prevent crime as well as to detect it. Often an immediate inquiry is an indispensable attribute to the prevention and discovery of crime." We find probable cause existed for the temporary detention of the defendants and that the 27 minutes delay between the initial stopping and the actual arrest of the defendants was not unreasonable under the circumstances herein.

Defendants' last assignment of error is that the State did not properly identify the defendants as the same persons who had been previously convicted and sentenced, as attested by the copies of judgments in evidence. Section 29-2222, R. R. S. 1943, provides: "At the hearing of any person charged with being an habitual criminal, a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any of such crimes formerly committed by the parties so charged, shall be competent and prima facie evidence of such former judgment and commitment."

In State v. Roan Eagle (1968), 182 Neb. 535, 156 N. W. 2d 131, we held: "An authenticated record establishing a prior conviction of a defendant with the same name is prima facie sufficient to establish identity for the purpose of enhancing punishment; and, in the absence of any denial or contradictory evidence, is sufficient to support a finding by the court that the accused has been convicted prior thereto."

Objection was made by the defendant Micek to two certified copies of judgments, one from Douglas County, the other from Platte County, Nebraska, because they were not properly authenticated. Section 25-1285, R. R. S. 1943, provides: "A judicial record of this state, or

of any other federal court of the United States, may be proved by the producing of the original, or by a copy thereof, certified by the clerk or the person having the legal custody thereof, authenticated by his seal of office, if he have one." Both of the exhibits introduced against the defendant Micek meet this test.

Where, however, the record was from a sister state, as it is in the case of the defendant Robinson, it is covered by section 25-1286, R. R. S. 1943, which provides: "That of a sister state may be proved by the attestation of the clerk and the seal of the court annexed, if there be a seal, together with the certificate of a judge, chief justice, or presiding magistrate, that the attestation is in due form of law." The exhibits presented in the case of defendant Robinson are properly authenticated as required by section 25-1286, R. R. S. 1943. Additionally, the defendant Robinson testified to and confirmed his previous convictions.

For the reasons given, we find no merit in the various assignments of error. The judgment of the trial court is affirmed.

AFFIRMED.

McCown, J., caveat.

Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, has been extended by the majority opinion to what might be said to be its ultimate limits. The Eighth Circuit Court of Appeals in Carpenter v. Sigler, 419 F. 2d 169, held that a reviewing court must objectively evaluate the specific and articulable facts, together with rational inferences from those facts, "and determine: (1) whether the facts warranted the intrusion on the individual's Fourth Amendment rights, and (2) whether the scope of the intrusion was reasonably related 'to the circumstances which justified the interference in the first place.' " See, also, People v. Grace, 32 Cal. App. 3d 447, 108 Cal. Rptr. 66; Keener v. State, 290 So. 2d 513 (Fla. App.).

The majority opinion here should not be taken to

authorize the continuation of an investigative stop beyond the time reasonably necessary to determine the identity of the individual or individuals and to obtain the information, the absence of which justified the initial stop. There should be no discouragement of good police work, but there should be no encouragement of unreasonable detention of citizens beyond the time necessary for reasonable verification of critical information. Terry v. Ohio, *supra*, authorizes only a brief or momentary stop.