**UNITED STATES of America, Plaintiff,**

v.

**Eugene HAIRSTON, Defendant.**

**No. 77 CR 126.**

United States District Court,
N. D. Illinois, E. D.

Oct. 18, 1977.

Thomas P. Sullivan, U. S. Atty. by James A. McGurk, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Michael D. Sher, Federal Defender Program, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

CROWLEY, District Judge.

The defendant, Eugene Hairston, has been indicted for a violation of 18 U.S.C. § 922(h) for receipt of a firearm by one having previously been convicted of a felony. Before the court at this time is defendant's motion to suppress.

On February 11, 1977, at approximately 2:00 p. m., Officers Alonso and Drake, Special Operations Group, Chicago Police Department, were on patrol in the area of 49th Street and Michigan Avenue in Chicago, Illinois. Observing a black Cadillac southbound on Michigan Avenue which was emitting a loud noise, the officers signalled the Cadillac to pull over. The Cadillac came to a stop within three-quarters of a block of where the officers first observed it. Defendant Eugene Hairston was the driver and sole occupant of the Cadillac.

Officer Alonso approached the Cadillac, informed Hairston of the violation and asked Hairston to display his driver's

license. The "stop" and request for a driver's license were, under the circumstances, reasonable and legal. However, Hairston was not arrested until after the search and therefore the Government does not argue that this search was the product of a lawful custodial arrest. See: *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

Hairston got out of the car and gave his license to Officer Alonso. Before doing so, however, Hairston explained that because he had recently been shot in the left hand, he would have to reach for his wallet in his left rear pocket with his right hand.

According to testimony, Officer Alonso immediately recognized the name Eugene Hairston on the license as an ex-leader of the Blackstone Rangers who had recently been released from the penitentiary. Stepping back a few feet for a better look at Defendant, Officer Alonso testified that he noticed a bulge in the groin area of defendant's trousers. Without any pat down or questioning, Officer Alonso thrust his hand directly into Hairston's pants and pulled out an object wrapped in a washcloth and rubber band. Unwrapping the washcloth produced a Browning, .25 caliber, semi-automatic, chrome plated pistol. The entire process took approximately thirty seconds.

■ The Fourth Amendment of the Constitution protects the individual from "unreasonable searches and seizures". This, of course, does not mean that a citizen should be free from all searches and seizures, but only from those which are unreasonable. Ideally, no search or seizure would be made without a warrant approved by a neutral judicial officer. However, the demand for effective law enforcement requires a more flexible standard. In response to these conflicting goals, the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967) enunciated a "stop and frisk" rule.

■ In *Terry*, the Court considered whether, within the bounds of the Fourth Amendment, it was reasonable for a police officer to conduct a search of a person for whom he did not have probable cause to arrest, but where the officer had a reasonable and articulable suspicion that the person was armed and that the person posed a threat to the safety of the officer. Considering both interests involved—the neutralization of danger to the policeman in the investigative circumstances and the sanctity of the individual, the Supreme Court held:

> Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the person with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. 392 U.S. at 30, 88 S.Ct. at 1884.

Thus, *Terry* involved a four-pronged test prior to a limited search without probable cause to arrest: (1) unusual conduct, (2) reasonable suspicion of criminal activity, (3) suspicion that person stopped is armed and dangerous and (4) fears not dispelled after reasonable inquiry.

■ The holding in *Terry* is clear and definite in its mandate: a police officer may make a search for a weapon on the basis of something short of probable cause to arrest. If there is a reasonable and articulable basis for the belief that the suspect is armed the police may search for and seize any weapon. However, the scope of that search must necessarily be limited to the "minimal necessary" to discover the possible weapons.

■ The question therefore is one of reasonableness in regard both to the decision to search and the scope of the search once initiated. 392 U.S. at 28, 88 S.Ct. 1868.

In the present case, the Government argues that *Terry* should not be read to re-

quire, in every situation, a "pat-down" as a prerequisite to a more thorough search for a weapon. Rather, the Government contends, *Terry* stands for the proposition that there is a requirement of case-by-case evaluation of whether the particular search was reasonable.

In support of its argument, the Government relies on *United States v. Hill*, 545 F.2d 1191 (9th Cir. 1976). Moments after a bank robbery had taken place and approximately 500 feet from the site, police stopped defendant to ask him whether he had seen anyone running from the scene. Hill was not a suspect at that time. However, upon noticing a bulge in Hill's shirt, the officer lifted the shirt and found six rolls of currency. Under these circumstances, the Ninth Circuit was of the opinion that the search was not overly intrusive:

> Any armed person at such a time and place and in such physical and time proximity to an armed bank robbery could reasonably be an actual or immediately potential danger. 545 F.2d at 1193.

As the Government points out, the Ninth Circuit formed its opinion even though no pat-down or preliminary search of Hill's outer clothing was made. Applying the *Terry* standard, the Ninth Circuit looked at the totality of the surrounding circumstances and concluded that the search and seizure was reasonable. *Terry*, the Court believed, did not limit reasonableness to situations involving a pat-down. "Any limited intrusion designed to discover" the weapon was considered reasonable. 545 F.2d at 1193.

In contrast to the Ninth Circuit's interpretation of *Terry* is the language of *Terry* itself which quite succinctly described the standard in terms of a limited search of the suspect's outer clothing. However, this court need not resolve this conflict. In the present case, regardless of the presence or absence of a pat-down, the search was unreasonable.

Unlike the situation in *United States v. Hill*, the only departure from the law in the present case was a noisy muffler. True, 49th and Michigan is located in a designated "high crime" area. However, there is no reason to suspect every person driving in such an area of being himself armed and dangerous.

The Government does not base its argument in favor of reasonableness on the nature of the area, however. Rather, the Government offers three facts which it argues leads to the reasonable inference that Hairston was armed.

First, the Government suggests that Hairston's explanation that he would have to reach behind himself with his right hand to get his wallet somehow demonstrated Hairston's "awareness of the danger faced by officers making traffic stops". (Government's Response to Defendant's Motion to Suppress, p. 4). This court is perplexed as to what bearing this has on the question of the police officer's perception of danger. Further, Hairston's actions suggest to this court that he was at all times cooperating fully with the police in such a way as to negate suspicion.

Second, the Government offers as relevant and compelling the fact that Hairston was a convicted felon. To adopt this argument would give carte blanche to law enforcement agencies to search anyone who had previously been convicted of a felony. The Fourth Amendment contains no such exception and this court is not about to condone such a position. In the absence of other circumstances from which the police could reasonably suspect that Hairston was armed, his prior conviction cannot justify this search and seizure.

And finally, the Government argues that Officer Alonso saw a bulge in Hairston's clothing which could reasonably suggest the presence of a weapon. At the hearing on the motion, Eugene Hairston wore the same clothes he had on when he was arrested. In open court, the weapon was wrapped and placed into his pants exactly as it was on February 11. Quite frankly, this court was unable to detect any perceptible bulge. *Cf. United States v. Hill*, 545 F.2d 1191, 1193 (9th Cir. 1976). Assuming, however, that Officer Alonso did in fact see a bulge, the search was nonetheless highly unreasonable.

In *Terry*, the Supreme Court showed considerable concern for the *scope* of a search. In the absence of a warrant or probable cause to arrest:

> The sole justification of the search . . . is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer. 392 U.S. at 29, 88 S.Ct. at 1884.

The search in the present case was certainly designed to discover a weapon. However, it went far beyond what was "minimally necessary". Immediately upon noticing the bulge, and without further inquiry, Officer Alonso reached into Hairston's pants and retrieved the weapon from his most private area. At the time, Hairston was cooperating fully with the police. Nothing in his conduct indicated any need for immediate action or, indeed, any action at all. This search was highly intrusive and a violation of Hairston's personal privacy and the guarantee of the Fourth Amendment. Consistent with the philosophy of our "jealous regard for maintaining the integrity of individual rights", *Mapp v. Ohio*, 367 U.S. 643, 647, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the motion to suppress is granted.