770 A.2d 719 (2001)
STATE of New Jersey, Plaintiff-Respondent,
v.
Harold LOVE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 2001.
Decided March 1, 2001.
*720 Theresa Yvette Kyles, Designated Counsel, argued the cause for appellant (Peter A. Garcia, Acting Public Defender, attorney; Ms. Kyles, of counsel and on the brief).
Analisa Sama Holmes, Trenton, argued the cause for respondent (John J. Farmer, Jr., Attorney General, attorney; Ms. Holmes, of counsel and on the brief).
Before Judges STERN and COLLESTER.
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant, Harold Love, appeals from an order denying his motion to suppress evidence pursuant to R. 3:5-7(d) following his plea to possession of a weapon by a convicted felon, N.J.S.A. 2C:39-7.
The sole witness at the suppression hearing was Patrolman McGee of the Atlantic City Police Department. An eighteen year police veteran, McGee testified that on January 27, 1998, he was on uniform patrol in the area of the boardwalk and the Tropicana Hotel Casino when he received a radio call from Patrolman Steven Ricketts that the defendant was seen riding on a bicycle, parking it against a boardwalk railing and entering the Tropicana. Ricketts also told McGee that the defendant resembled a person who had committed numerous purse snatchings in the area.
McGee knew that ten purse snatchings had been committed in the casino area of the boardwalk during September and October 1997, the last one in the Tropicana parking garage. He also knew the description of the perpetrator given by the various witnesses was of a thin black male wearing dark clothing ranging in height from five foot eight inches to six feet and in age from twenty to forty. On the date in question defendant was a thirty-six year old black male weighing about 140 pounds with a two inch beard. He was known to McGee and other Atlantic City police officers because of convictions for a homicide and a prior robbery which McGee described as "a pretty famous case."[1]
*721 McGee set up surveillance near where defendant had parked his bicycle. Tropicana Hotel security was alerted to keep an eye on the defendant in the casino but not to approach him unless "something happened." After about fifteen minutes, four Tropicana security officers left the casino and walked to defendant's bicycle. A minute or two later the defendant exited the Tropicana, walked to his bicycle, where he was surrounded by the security officers.
McGee radioed Ricketts to move in. McGee testified that it was his intention to find out what had happened and, in any event, to detain defendant until he answered questions as to what he was doing and where he lived.
When he arrived at the group, McGee was told by the security officers that nothing had happened in the Tropicana. Ricketts then told the defendant that he fit the description of someone wanted for a series of purse snatchings. McGee said defendant looked nervous. Ricketts ordered him to place his hands on top of his head so that he could be frisked for weapons. The defendant started to comply but kept bringing his hands down despite Ricketts telling him several times to keep his hands on top of his head.
McGee described what happened next:
We noticed he was wearing a belly bag around his waist, and Officer Ricketts wanted to do a protective frisking of his waist. He moved the belly bag. The defendant brought his hands down. Officer Ricketts grabbed the handle of the automatic. He told him, he says, I got a gun. The defendant brings his hands down, he starts struggling. Ricketts let's go of the gun on to the boardwalk, I picked up the gun. And we have a struggle with the guy to get him into custody.
The weapon seized was a Browning .380 semi-automatic handgun loaded with thirteen rounds of ammunition. Further search of defendant yielded a small amount of heroin. He was taken into custody and subsequently was indicted for third degree possession of heroin, N.J.S.A. 2C:35-10a(1); third degree possession of a handgun without a permit, N.J.S.A. 2C:39-5b and 58-4; second degree possession of a handgun by a person previously convicted of a crime, N.J.S.A. 2C:39-7; fourth degree resisting arrest, N.J.S.A. 2C:29-2a(1); and third degree aggravated assault on a police officer, N.J.S.A. 2C:12-1b(5).
After the denial of his motion to suppress, defendant entered into an agreement to plead guilty to possession of a weapon by a convicted felon, N.J.S.A. 2C:39-7. He was sentenced to eight years incarceration with a three and one-half period of parole ineligibility. Defendant appeals pursuant to R. 3:5-7(d) from the order denying suppression of evidence and from the length of incarceration imposed, alleging the following:

POINT IBECAUSE THE POLICE WERE WITHOUT REASONABLE BASIS TO PROLONG DEFENDANT'S DETENTION AFTER THEY DISCOVERED THAT HE HAD COMMITTED NO CRIME, AND BECAUSE THEY LACKED A SPECIFIC AND PARTICULARIZED BASIS FOR AN OBJECTIVELY REASONABLE SUSPICION THAT DEFENDANT WAS ARMED AND DANGEROUS, ANY EVIDENCE SEIZED DURING THE PAT-DOWN SHOULD HAVE BEEN SUPPRESSED.

POINT IITHE SENTENCE IMPOSED IS EXCESSIVE AND BASED ON AN INAPPROPRIATE FINDING OF AN AGGRAVATING FACTOR.
*722 There is a wide and rich diversity of street encounters between citizens and police officers, and appropriate deference must be given to an officer's experience in evaluating suspicious conduct and circumstances. State v. Citarella, 154 N.J. 272, 279-80, 712 A.2d 1096 (1998); State v. Sheffield, 62 N.J. 441, 445, 303 A.2d 68, certif. denied, 414 U.S. 876, 94 S.Ct. 83, 38 L.Ed.2d 121 (1973); State v. Maryland, 327 N.J.Super. 436, 450, 743 A.2d 876 (App.Div.2000). While citizens must be assured that their personal integrity will not be violated by overzealous or unreasoned police actions, law enforcement officers must not be held to inflexible, unrealistic standards which compromise their safety or the safety of the general citizenry.
In striking this delicate balance courts have mandated that an investigative stop by a police officer be grounded on a particularized, objective and articulable showing that the suspect had been or was engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981); State v. Davis, 104 N.J. 490, 505, 517 A.2d 859 (1986); State v. Arthur, 149 N.J. 1, 8, 691 A.2d 808, (1997). This standard is less than the probable cause necessary to arrest but more than a "feeling" or hunch. United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); State v. Thomas, 110 N.J. 673, 679, 542 A.2d 912 (1988).
In the instant case the officers simply observed the defendant riding his bicycle in a lawful manner on the Atlantic City Boardwalk and entering a hotel casino. No observable criminal wrongdoing was evidenced. While defendant fit some but not all particulars of the general description given of person or persons who committed purse snatchings in a busy large section of Atlantic City three or four months earlier, it can be safely said that countless others matched the same descriptions. Similarly, the observations that defendant appeared "nervous" is of little consequence since he was stopped and was surrounded by four security officers and two uniformed policemen. No unusual conduct by defendant or suspicious circumstances justified the investigative stop.
Nor is the officer's knowledge of defendant's criminal record alone sufficient. State v. Valentine, 134 N.J. 536, 547, 636 A.2d 505 (1994). Defendant's violent criminal history was assuredly the reason that he was ordered to place his hands upon his head for a precautionary weapons pat-down before any questioning. Knowledge of a suspect's prior criminal record is a proper consideration in evaluating the reasonableness of a frisk following an investigative stop, but it is insufficient to justify the preceding stop. Ibid.
The actions taken by the officers were based on a hunch rather than an objectively reasonable and articulable suspicion. The fact that the hunch was correct is regrettably insufficient.
In light of our determination that the search was constitutionally improper we need not address defendant's argument that his sentence was excessive. We reverse and vacate the entry of the guilty plea.
NOTES
[1] See State v. Love, 282 N.J.Super. 590 (App. Div.) certif. denied, 142 N.J. 572, 667 A.2d 189 (1995).