STATE OF NEBRASKA, APPELLEE, V.
ROBERT E. COLEMAN, JR., APPELLANT.
630 N.W.2d 686

Filed July 10, 2001.   No. A-00-511.

George B. Achola, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

Irwin, Chief Judge, and Sievers and Carlson, Judges.

SIEVERS, Judge.

The issue in this appeal is whether a warning from a dispatcher to a police officer making a traffic stop that the driver is "a 2CX," which the officer testified means a "convicted felon that should be considered extremely dangerous," justifies a pat-down search of the suspect. See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The pat down turned up illegal drugs, and in the course of the pat down, the driver bit the officer several times. We hold that such "2CX" designation, standing alone, does not furnish a reasonable suspicion that the driver is armed and may be patted down.

## PROCEDURAL BACKGROUND

After the traffic stop and pat-down search, Robert E. Coleman, Jr., was arrested for biting Officer David G. Rieck and possessing narcotics. Coleman was charged with third degree assault on an officer and possession of a controlled substance. Coleman moved to suppress the evidence obtained after the pat-down search. At the hearing on Coleman's motion to suppress, the State's evidence consisted exclusively of Rieck's testimony and a videotape of the entire stop. The district court for Douglas County overruled Coleman's motion to suppress, and the case went to trial. During trial, Coleman renewed his motion to suppress and objected to all evidence adduced from the allegedly unconstitutional search and seizure. The court overruled the renewed motion and granted Coleman a continuing objection to evidence obtained as a result of the pat-down search. A jury convicted Coleman of assaulting an officer and possessing a controlled substance. After an enhancement hearing, Coleman was sentenced to a minimum of 10 years' imprisonment for both counts, to be served concurrently. He appeals the overruling of his motion to suppress and claims he had ineffective assistance of trial counsel.

## FACTUAL BACKGROUND

At 11:37 p.m. on March 30, 1999, Rieck stopped Coleman for failing to signal a turn. Upon request, Coleman gave his driver's license and registration to Rieck, who was in uniform and driving a marked police car at the time. Rieck testified that he did

not see any weapons in Coleman's car, that Coleman complied with Rieck's initial requests, and that Coleman was not belligerent or out of control.

As he stood at Coleman's car door, Rieck performed a data check on Coleman's license. According to Rieck, a data check involves an officer's request via the police department's radio system to the dispatcher to find out whether a person has outstanding warrants, a criminal history, or a suspended license. Rieck testified that the data check revealed that Coleman's driver's license had not been suspended and that there were no outstanding warrants for his arrest. Rieck stated that dispatch informed him that Coleman "was a 2CX," meaning a "convicted felon that should be considered extremely dangerous." Rieck testified that the Omaha Police Department was the source of the 2CX rating and that 2CX has a standard meaning to all police officers who hear it. Rieck testified that he customarily conducts pat-down searches on those with 2CX status, because "knowing that he's an extremely dangerous person and I have to turn my back on him to get back to my cruiser, I want to make sure he doesn't have any weapons on him." Rieck admitted that other than the 2CX rating, he had no other evidence that Coleman was dangerous before conducting the pat down, that the 2CX rating did not indicate which felonies are involved in the conviction, and that some felony convictions can be classified as nondangerous. The videotape of the stop from Rieck's cruiser confirms that Rieck informed Coleman that his status was 2CX and that therefore Rieck was going to pat him down. The videotape shows that Rieck opened Coleman's car door after this brief discussion and directed Coleman to place his hands on the roof of the car. After some verbal disagreement, Coleman got out of the car and placed his hands on the roof as Rieck patted him down.

During the pat down, the extent or technique of which Coleman does not contest, Rieck felt what he thought was a small piece of a television antenna in Coleman's front left pocket. Rieck testified that based on his experience, he thought the small tube was used as a crack cocaine pipe. Rieck stated (and the videotape shows) that he asked Coleman to remove the object from his pocket, whereupon Coleman took out a lighter

and at some point furtively put something into his mouth. Rieck repeatedly shouted at Coleman to spit out the object, and a struggle ensued between the two, during which Coleman bit Rieck several times. With the help of six other officers, Rieck was eventually able to handcuff Coleman and retrieve a crack cocaine pipe. At some point during the struggle, Coleman spit out the object, which was seized and later identified as crack cocaine.

## ASSIGNMENTS OF ERROR

Coleman's two assignments of error are (1) that the district court erred in overruling his motion to suppress because his stop, search, and arrest were not based on reasonable suspicion and (2) that Coleman was denied effective representation due to his lawyer's performance at trial.

## STANDARD OF REVIEW

A trial court's ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo. *State v. Scovill*, 9 Neb. App. 118, 608 N.W.2d 623 (2000). A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *Id.*

In reviewing rulings on a motion to suppress evidence, an appellate court considers all the evidence at trial, as well as at the hearing on the motion. *State v. Tierney*, 7 Neb. App. 469, 584 N.W.2d 461 (1998).

## ANALYSIS

Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect against unreasonable searches and seizures by the government. *State v. Kinney*, 6 Neb. App. 102, 572 N.W.2d 383 (1997). Under both Constitutions, limited investigatory stops are permissible only upon a reasonable suspicion, supported by specific and articulable facts, that the person is, was, or is about to be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Chronister*, 3 Neb. App. 281, 526 N.W.2d 98 (1995). In addition to an investigatory stop, an officer

is entitled, for the protection of himself or herself and others in the area, to conduct a carefully limited search of the outer clothing of persons stopped on *Terry* grounds to discover weapons which might be used to assault the officer. *Terry, supra; State v. Gutierrez,* 9 Neb. App. 325, 611 N.W.2d 853 (2000). The sole justification for a pat-down search for weapons is the protection of the officer and other persons nearby. *Terry, supra; Tierney, supra.*

In determining whether an officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that is given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of his or her experience. *State v. Ellington,* 242 Neb. 554, 495 N.W.2d 915 (1993). Whether a police officer has a reasonable suspicion based on sufficient articulable facts requires taking into account the totality of the circumstances. *Id.* Moreover, an investigative stop, like probable cause, is to be evaluated by the collective information of the police engaged in a common investigation. *Id.* When the collective knowledge of the law enforcement agency for which an officer acts provides the basis for a search and seizure, some communication of that knowledge to the officer conducting the search and seizure is required. *State v. Hicks,* 241 Neb. 357, 488 N.W.2d 359 (1992). In a "collective knowledge" case, the totality of the circumstances includes the observations, knowledge, and inferences drawn by each officer working on that case. *State v. Pillard,* 235 Neb. 642, 456 N.W.2d 755 (1990). The collective knowledge doctrine is significant here because Rieck searched Coleman based on information, of which he had no personal knowledge, given to him by a police dispatcher.

Coleman does not contest the lawfulness of the traffic stop for failing to signal a turn, nor does he contend that the license check was illegal. His argument is that Rieck did not have reasonable suspicion to pat him down after learning the results of the license check. There is no question that Coleman was searched. See *State v. Caples,* 236 Neb. 563, 462 N.W.2d 428 (1990) (search of person's outer clothing in attempt to find weapons is "search" under Fourth Amendment). In its order denying Coleman's motion to suppress, the district court framed the issue as whether the search of Coleman "went beyond the permissible Terry patdown." However, we frame the issue as

whether the pat down was permissible under *Terry*, not whether the scope of the pat down exceeded that allowed by *Terry*. There is agreement that Coleman was searched solely because of his 2CX status. It is also undisputed that some felonies are not considered dangerous and that Rieck did not know, nor was he informed by the dispatcher, of the specific convictions responsible for Coleman's 2CX rating. Coleman admitted at trial to three prior felony convictions, but no details thereof are in the record. The 2CX rating is the only basis for the search of Coleman and upon which a finding of reasonable suspicion for a pat down can rest. Thus, the ultimate question is whether under the circumstances Rieck reasonably believed that his safety or that of others was in danger. See *State v. DeJesus*, 216 Neb. 907, 347 N.W.2d 111 (1984).

Without authority from factually similar cases, the State asserts simply that the pat down "was authorized by *Terry*" once Rieck learned that Coleman was a convicted felon who was extremely dangerous. Brief for appellee at 12. Coleman's position is that "a felony conviction as well as an officer's knowledge of a person's criminal history is not enough to justify a pat down frisk." Reply brief for appellant at 6.

In *State v. Stubblefield*, 2 Neb. App. 307, 509 N.W.2d 243 (1993), we upheld a pat-down search of a motorist, because among other factors, the officer discovered that the suspect was a convicted felon coded as "dangerous" in police records. Unlike the instant case, in addition to the radio warning, the motorist in *Stubblefield* was stopped in " 'a high drug area' "; the windows of the motorist's vehicle were darkly tinted, which prevented the officer from seeing inside the vehicle; and the motorist was upset and belligerent at having been stopped by the police. *Id.* at 311, 509 N.W.2d at 246.

In *State v. Kinney*, 6 Neb. App. 102, 572 N.W.2d 383 (1997), after stopping a motorist for a traffic violation, the officer called in the motorist's license for a routine data check. The dispatcher replied that the motorist was in the Nebraska State Patrol's " '10-38' " file, *id.* at 105, 572 N.W.2d at 386, meaning that the person was "potentially dangerous," *id.* at 106, 572 N.W.2d at 386. In addition to this warning, the officer received a radio warning to "use caution" from a fellow officer who was familiar with

the motorist's record. *Id.* at 106, 572 N.W.2d at 387. Based partly on these radio warnings, we upheld the pat-down search of the motorist because the officer reasonably believed that his safety or that of others was in danger. However, in *Kinney*, the officer had much more than the radio warnings, including the officer's observation of police equipment in Kinney's vehicle (badge, scanner, pistol in shoulder holster, binoculars) and of a beer can when he initially contacted the motorist. Because the officer's suspicions were based in part upon the knowledge of others, we found it necessary to determine whether the cautionary warnings from the State Patrol or the fellow officer were likewise based upon a reasonable belief that the motorist could be armed and dangerous. Given the fellow officer's personal knowledge of the motorist's criminal background, we found a reasonable basis for his warning and declined to decide "whether [the motorist's] name being on the State Patrol's 10-38 (potentially dangerous) list was sufficient, standing alone, to create a reasonable belief that [the motorist] was dangerous." *Id.* at 112, 572 N.W.2d at 390.

■ We are unaware of any Nebraska cases which directly address the instant fact pattern which we foresaw in *Kinney*—a pat down based solely on a warning from a dispatcher. Nevertheless, several general rules from factually similar cases help guide our analysis. The Nebraska Supreme Court has held that reasonable suspicion need not be based only on an officer's personal observations, see *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992), and has specifically rejected the argument that reasonable cause for a stop and pat down can only be based on an officer's personal observation rather than on information supplied by another person, *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992). As previously stated, it is well established that the collective knowledge of law enforcement may provide the basis for a search and seizure, but some communication of that knowledge to the officer conducting the search and seizure is required. *State v. Zemunski and Whiteley*, 228 Neb. 536, 423 N.W.2d 443 (1988). In the instant case, communication of Coleman's 2CX status between dispatch and Rieck led to the pat down of Coleman.

■ An officer must have reasonable suspicion before making an investigative traffic stop and before conducting a pat-down

search. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). While the Nebraska Supreme Court has not addressed whether warnings from fellow officers alone can justify a pat down, the court has addressed whether such warnings can justify an investigative stop of a motorist. In *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997), a motorist argued that dispatch's "caution message" on which the officer relied in making a traffic stop did not create reasonable suspicion because the officer did not observe any facts corroborating the report. In rejecting this argument, the Nebraska Supreme Court stated: "[I]t is irrelevant whether an officer making a stop in reliance on a radio bulletin is aware of the factual foundation for the bulletin, so long as the factual foundation is sufficient to support a reasonable suspicion." *Id.* at 322, 570 N.W.2d at 354. See, also, *United States v. Hensley*, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985) (officer may rely on flyer or bulletin in making *Terry* stop if bulletin is based on articulable facts supporting reasonable suspicion); *State v. Benson*, 198 Neb. 14, 251 N.W.2d 659 (1977) (where no evidence was provided at suppression hearing regarding information or facts relied on as factual foundation for broadcast message, radio message alone did not establish existence of reasonable suspicion); *State v. Micek*, 193 Neb. 379, 227 N.W.2d 409 (1975) (upholding traffic stop made solely on basis of radio bulletin that was based on facts creating reasonable suspicion or probable cause); *State v. Mays*, 6 Neb. App. 855, 578 N.W.2d 453 (1998) (reasonable suspicion not present where State offered no factual foundation for fellow officer's warning to arresting officer that driver of red pickup was drug dealer and had drugs on his person), *overruled on other grounds, State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000).

■ The court in *Soukharith, supra,* concluded that the stop was lawful on the basis of a warning from a dispatcher if the officers who generated the information upon which the dispatcher relied had articulable facts supporting the cautionary message. The vehicle in *Soukharith* was a " 'fancy sports car' " driven by a young man, which a Wyoming state trooper thought seemed "out of place." 253 Neb. at 314, 570 N.W.2d at 350. A National Crime Information Center check by the trooper before any stop revealed that the vehicle was associated with a missing white female in

her forties and that there was a " 'caution message' " concerning the vehicle. *Id.* When the trooper pulled alongside the car, he saw no female and proceeded to stop the vehicle. Although *Soukharith* dealt with a challenge to an investigative stop instead of to a pat down after a valid stop as here, its teaching is equally applicable to the present situation. Thus, we hold that a safety warning from another officer such as a dispatcher, standing alone, can supply reasonable suspicion that a suspect is armed, and the officer making the pat-down search need not be aware of the factual basis behind the warning so long as the issuance of the warning is based on articulable facts supplying reasonable suspicion that a lawfully stopped individual is potentially armed and dangerous. Therefore, the key in such situations becomes whether there is evidence in the record of the basis for the warning and whether that evidence supports a reasonable suspicion that the individual is potentially armed and dangerous.

The problem here is that the record lacks such evidence. Proof of a factual foundation for the warning ensures that *Terry* stops are based on articulable facts instead of a fellow officer's baseless warning. See *Whiteley v. Warden*, 401 U.S. 560, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971). "An otherwise invalid Fourth Amendment intrusion upon an individual cannot be cleansed merely by radioing a policeman on patrol to accomplish what the dispatcher or desk officer on the information available to him could not do directly." *State In Interest of H.B.*, 75 N.J. 243, 265, 381 A.2d 759, 770 (1977) (Handler, J., dissenting). In the instant case, the State introduced no evidence of the factual basis behind the 2CX designation, and while Coleman admitted at trial to three prior felony convictions, there was no evidence that any of those crimes were of a type or involved a fact pattern which would allow a reasonable inference that Coleman was potentially armed and dangerous. In fact, there was no evidence beyond the fact of the three convictions. The record does not reveal whether they are weapons offenses or mail fraud cases.

Pat downs based solely on a defendant's criminal history have been found unconstitutional. See, e.g., *United States v. Hairston*, 439 F. Supp. 515 (N.D. Ill. 1977) (those with prior felony convictions are not excepted from protections of Fourth

Amendment); *People v. Brown*, 204 A.D.2d 994, 613 N.Y.S.2d 70 (1994) (illegal pat down of suspected drug dealer where officer did not observe any criminal activity and where his radio transmissions did not indicate that suspected drug dealer was armed and dangerous). "No mathematical formula exists for deciding whether the totality of the circumstances provide an officer with a reasonable belief that a suspect was armed and dangerous." *State v. Valentine*, 134 N.J. 536, 546, 636 A.2d 505, 510 (1994). While an officer need not be certain that a suspect is armed, the issue is whether a reasonably prudent person in the same circumstances would have believed that his or her safety or the safety of others was threatened. *State v. Stubblefield*, 2 Neb. App. 307, 509 N.W.2d 243 (1993).

The court in *Valentine* acknowledged that knowledge of a suspect's criminal history is a relevant factor in weighing whether there was reasonable suspicion, and stated: "In many instances, a reasonable inference may be drawn that a suspect is armed and dangerous from the fact that he or she is known to have been armed and dangerous on previous occasions." 134 N.J. at 548, 636 A.2d at 511. Here, the State failed to adduce evidence that at any time in the past, Coleman had been armed when arrested or that his prior crimes involved the use of a weapon. An officer's knowledge that a suspect has an unspecified criminal history is not sufficient, by itself, to justify a pat-down search after a lawful traffic stop. See, *U.S. v. Davis*, 94 F.3d 1465 (10th Cir. 1996); *Hairston, supra*; *State v. Dumas*, 786 So. 2d 80 (La. 2001); *Valentine, supra*; *People v. Manning*, 51 A.D.2d 933, 381 N.Y.S.2d 254 (1976). See, also, *Kenion v. United States*, 302 A.2d 723 (D.C. 1973) (police officer's good faith belief that suspect has criminal record does not justify stop and pat down).

*Dumas* and *Valentine* also indicate that while knowledge of a prior felony record does not alone provide reasonable grounds for a pat-down search, such knowledge in combination with other factors may provide reasonable suspicion that a suspect is armed and dangerous. See *State v. Love*, 338 N.J. Super. 504, 770 A.2d 719 (2001) (knowledge of suspect's prior criminal record is proper consideration in evaluating reasonableness of pat down). Compare, *U.S. v. McRae*, 81 F.3d 1528, 1536 (10th

Cir. 1996) (reasonable suspicion to pat down motorist present where officer was alone on isolated stretch of highway, was about to search suspect's automobile, and had been warned by dispatch to approach driver with "'extreme caution'"); *U.S. v. Menard*, 898 F. Supp. 1317, 1320 (N.D. Iowa 1995) (officer had reasonable suspicion to pat down back seat passenger in car where officer was reminded by fellow officer of "officer safety warning" posted at police department stating that front seat passenger was believed to be armed with pistol).

The *Terry* holding requires a balancing of the need to protect officers and the public through pat-down searches against the Fourth Amendment prohibition against unreasonable searches and seizures. A pat down for weapons, which is a search, even when a lawfully stopped traffic violator is involved, is unreasonable unless the State proves that the officer had reasonable suspicion, based upon articulable facts, that the violator was armed and dangerous. The record here lacks such proof, and thus we must find that the pat down was an unreasonable and unlawful search. The district court should have suppressed the physical evidence from the pat down, including the drugs which were seized. Our holding moots Coleman's argument that the seizure of the crack cocaine pipe was unjustified because "Officer Rieck was not afraid of this antenna-like object, he just suspected it was a crack pipe." Brief for appellant at 15.

*Effect of Illegal Pat Down on Coleman's Assault Conviction.*

Coleman does not separately attack his assault conviction except by indirect inclusion of that conviction in his claim that the Fourth Amendment was violated by the pat down. Citing *State v. Tierney*, 7 Neb. App. 469, 584 N.W.2d 461 (1998), he argues that the district court should have suppressed evidence of his "struggle with Officer Rieck" because all activities occurring after an illegal search cannot be used as evidence against a defendant—the illegal search "is equivalent to the subsequent activities being erased." Brief for appellant at 16. We disagree.

Coleman correctly points out that the fruits of illegal searches may not be used as evidence against a defendant. See *State v. Runge*, 8 Neb. App. 715, 601 N.W.2d 554 (1999). However,

Coleman's reliance on *Tierney* is misplaced because *Tierney* did not involve an assault on an officer after an illegal search, nor does that case stand for the proposition that all evidence of events occurring after an illegal search cannot be used against the victim of the search. Under Coleman's argument, even if Coleman had shot and killed Rieck while struggling over the drugs after the illegal pat down, the State could not prosecute Coleman for murder, an obviously absurd result. Coleman extends the "tainted fruit" rule too far and reaches an illogical outcome.

Moreover, in Nebraska, it is well established that one may not forcibly resist an arrest, regardless of whether the arrest is legal. Neb. Rev. Stat. § 28-1409(2) (Reissue 1995); *State v. Clark*, 8 Neb. App. 936, 605 N.W.2d 145 (2000). Although there is not a similar statute barring the use of force to resist an illegal pat-down search, the rationale and policy behind the ban on resistance to arrests in § 28-1409(2) is applicable to the use of force to resist pat downs, even though the search may be later found to fail constitutional muster. Other jurisdictions have ruled that convictions for assaulting an officer after an illegal pat down may stand because of the dangers in permitting citizens to resort to self-help. See, *Elson v. State*, 659 P.2d 1195 (Alaska 1983) (private citizen may not use force to resist search by one he or she knows or has good reason to believe is authorized police officer performing his or her duties, regardless of legality of search); *State v. Blackman*, 94 Md. App. 284, 617 A.2d 619 (1992) (even if pat down was illegal, defendant was not entitled to resist it, and so his arrest for assault and battery was lawful); *State v. Ritter*, 472 N.W.2d 444 (N.D. 1991) (police misconduct does not excuse forceful resistance, and purpose of exclusionary rule to deter official misconduct does not extend to evidence of independent crime even though it was precipitated by unlawful search and seizure). Therefore, we hold that one may not justifiably resist an officer during a pat down, regardless of whether the pat down is lawful. Thus, despite the unconstitutionality of Rieck's pat down, Coleman was not justified in biting Rieck, and the evidence of Coleman's assault upon Rieck was not "tainted" by the illegal search. There being no other challenge to the assault conviction except the pat down, we affirm Coleman's conviction and sentence for assaulting Rieck.

*Ineffective Assistance of Counsel.*

Coleman argues that his trial lawyer's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area because his lawyer was ill prepared and unmotivated for trial. The Sixth Amendment to the U.S. Constitution guarantees every criminal defendant the right to effective assistance of counsel. *State v. Toof*, 9 Neb. App. 535, 616 N.W.2d 32 (2000). To show that this right has been denied, a defendant must first show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Williams*, 259 Neb. 234, 609 N.W.2d 313 (2000). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* The two-prong test for an ineffective assistance of counsel claim need not be addressed in order. *Id.* If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id.*

Coleman makes this ineffectiveness claim on direct appeal, and there has been no evidentiary hearing on his allegations. Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. *State v. Becerra*, 253 Neb. 653, 573 N.W.2d 397 (1998). Whether Coleman's attorney was ill prepared and unmotivated was not at issue at the trial court level; thus, there is no evidence in the record with which to decide these claims, and the answer to the allegations does not appear on the face of the trial record. When the competence of counsel has not been raised or ruled on at the trial court level and the issue may necessitate an evidentiary hearing, an appellate court will not address the matter on direct appeal. *Id.* An evidentiary hearing may be necessary to determine these claims, depending on later pleadings, because the record we have is inadequate to determine such claims.

Coleman cites *State v. McGurk*, 3 Neb. App. 778, 532 N.W.2d 354 (1995), for the generic claim that he "is entitled to a new trial as the circumstances justify a presumption of ineffectiveness." Brief for appellant at 18. Although counsel is ordinarily presumed

to be competent, *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), in *McGurk*, we recognized that deficient performance of counsel may be presumed, among other situations, "where the surrounding circumstances may justify a presumption of ineffectiveness without inquiry into counsel's actual performance at trial." 3 Neb. App. at 786-87, 532 N.W.2d at 361. This presumption of deficient performance attaches in only a very narrow spectrum of cases where a lawyer has clearly prejudiced a defendant due to blatant errors. See *McGurk, supra*, and cases cited therein. In this case, Coleman fails to identify what "surrounding circumstances" warrant a presumption of ineffectiveness of counsel. And, a review of the record reveals no blatant errors by Coleman's lawyer which clearly prejudiced Coleman. This assignment has no merit.

## CONCLUSION

Rieck did not have reasonable suspicion based on articulable facts to justify a pat down of Coleman when all the information he received from his dispatcher was that Coleman was labeled a "2CX" and there was no proof of the facts behind that warning. Thus, the fruits of the search should have been suppressed, and we reverse the drug possession conviction. However, because Coleman could not lawfully resist the pat down, albeit unlawful, the evidence of his assault on Reick was properly admitted, and we sustain that conviction. Coleman's claim of ineffective assistance of counsel has no merit on this record.

AFFIRMED IN PART, AND IN PART REVERSED.