779 N.W.2d 117 (2010)
18 Neb. App. 265
STATE of Nebraska, appellee,
v.
Luis Carlos VASQUEZ-ARENIVAR, appellant.
No. A-09-437.
Court of Appeals of Nebraska.
February 16, 2010.
*119 Jeff E. Loeffler, Deputy Hall County Public Defender, for appellant.
Jon Bruning, Attorney General, and George R. Love, Columbus, for appellee.
INBODY, Chief Judge, and IRWIN and CASSEL, Judges.
INBODY, Chief Judge.

INTRODUCTION
A jury convicted Luis Carlos Vasquez-Arenivar of possession of a controlled substance with the intent to distribute and tampering with physical evidence. Following his sentencing, Vasquez-Arenivar appealed to this court alleging that the district court erred in denying his motion to suppress on the basis that he was subjected to an unconstitutional pat-down search for weapons. We disagree with Vasquez-Arenivar, finding that the pat-down search of his person was constitutional and that Vasquez-Arenivar, who was being legally detained, abandoned a bag of drugs in the presence of an officer. We find that although insufficient evidence *120 was not assigned as error by Vasquez-Arenivar, the evidence is insufficient, as a matter of law, to support Vasquez-Arenivar's conviction for tampering with physical evidence.

STATEMENT OF FACTS
Vasquez-Arenivar was one of two passengers in a vehicle stopped for driving the wrong way down a one-way street. The driver admitted to consuming alcohol, and the investigating officer conducted an investigation to determine if the driver was driving while intoxicated, while Sgt. Tony Keiper and two officers arrived to assist. The officers were concerned because the other passenger, Lisia Pacheco, had been implicated in the distribution of methamphetamine and had been convicted on firearm charges and because the vehicle had an extremely dark tint on the windows, making it difficult to see inside the vehicle. Vasquez-Arenivar, who was able to speak English, told Keiper he was on the way to meet his wife, he was getting a ride, and he worked for a construction company. However, when Keiper asked Vasquez-Arenivar about drugs and firearms, Vasquez-Arenivar looked away and delayed his responses, and the issue arose of whether Vasquez-Arenivar could understand Keiper's questions.
Keiper asked Vasquez-Arenivar and Pacheco to exit the vehicle and conducted a pat-down search for weapons of both passengers for officer safety; however, prior to conducting the pat-down search of Vasquez-Arenivar, Keiper noticed a large bulge in Vasquez-Arenivar's left front pocket. Keiper testified that as he conducted the pat-down search, the bulge felt like "a larger, soft cylinder-shaped bunch" and felt "slightly mushy." The pat-down search confirmed that Vasquez-Arenivar was not concealing any weapons on his person, so Keiper had Vasquez-Arenivar sit on the curb near Pacheco. However, since Keiper suspected that the bulge was drugs, he requested consent to search Vasquez-Arenivar's person, which request was refused. Keiper then conferred with one of the officers, and while the officers were talking, Vasquez-Arenivar stood up and turned his left side away from the officers, putting himself between the officers and Pacheco. The officers then saw what appeared to be a large Ziploc bag lying on the ground between Pacheco's feet. Keiper knew the area of the curb where Pacheco and Vasquez-Arenivar were sitting was clear of objects prior to the two individuals' sitting down, and Pacheco denied knowing anything about the bag.
Keiper conducted another pat-down search of Vasquez-Arenivar, which search confirmed that the bulge was no longer present. Upon examination of the Ziploc bag, it was determined that the bag contained controlled substances, and Vasquez-Arenivar was arrested. During booking, another officer informed Vasquez-Arenivar that he was going to be subjected to a search, at which point Vasquez-Arenivar pointed to his pocket and said, "[T]hat is all I have, it's in here." The officer looked in the coin pocket of Vasquez-Arenivar's pants and found a sandwich bag containing what appeared to be methamphetamine. Vasquez-Arenivar then stated that "he was stupid, he made a mistake, that it was the first time, and he needed the money." The contents of the bags were tested and found to contain a total of 53.74 grams, or approximately 1.9 ounces, of methamphetamine, with a street retail value of $5,300. The Ziploc bag seized at the scene contained four knotted plastic baggies each containing between 13.02 and 13.30 grams of methamphetamine. The knotted plastic bag found on Vasquez-Arenivar's person contained 1.28 grams of methamphetamine. Keiper testified that both the amount of methamphetamine seized and *121 the manner in which the drugs were packaged indicated that the methamphetamine was intended for resale, not personal use.
Vasquez-Arenivar was charged with possession of a controlled substance (methamphetamine) with the intent to distribute and tampering with physical evidence. Vasquez-Arenivar filed a motion to suppress, contending that his arrest, search, seizure, and questioning were in violation of his constitutional rights and that thus, all evidence obtained as a result thereof should be suppressed, which motion was denied. A jury trial was held, and the jury convicted Vasquez-Arenivar of the charged offenses. Following his sentencing, Vasquez-Arenivar appealed to this court, alleging that the district court erred in denying his motion to suppress.

ASSIGNMENT OF ERROR
Vasquez-Arenivar's sole assignment of error is that the district court erred in denying his motion to suppress.

STANDARD OF REVIEW
In reviewing a trial court's ruling on a motion to suppress, we review the ultimate determination of probable cause de novo and review the findings of fact made by the trial court for clear error, giving due weight to the inferences drawn from those facts by the trial court. State v. Wenke, 276 Neb. 901, 758 N.W.2d 405 (2008).

ANALYSIS

Denial of Motion to Suppress.
Vasquez-Arenivar's sole assignment of error is that the district court erred in denying his motion to suppress which asserted the pat-down search for weapons was unconstitutional for the reason that the officer did not have reasonable suspicion, based on articulable facts, that Vasquez-Arenivar was armed and dangerous.
Vasquez-Arenivar does not contest the initial stop of the vehicle in this case. The stop, for driving the wrong way down a one-way street, clearly was proper. See Neb.Rev.Stat. § 60-6,138 (Reissue 2004). A traffic violation, no matter how minor, creates probable cause to stop the driver of the vehicle. State v. Royer, 276 Neb. 173, 753 N.W.2d 333 (2008). Officers could also clearly order Vasquez-Arenivar out of the vehicle pending completion of the stop. See State v. Gutierrez, 9 Neb. App. 325, 611 N.W.2d 853 (2000) (officer making traffic stop may order driver and passengers to get out of vehicle, pending completion of stop). See, also, Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). This brings us to the question posed by Vasquez-Arenivar: Did the officer who conducted the pat-down search of Vasquez-Arenivar have reasonable suspicion, based on articulable facts, that Vasquez-Arenivar was armed and dangerous?
In addition to an investigatory stop pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an officer is entitled, for the protection of himself or herself and others in the area, to conduct a carefully limited search of the outer clothing of persons stopped on Terry grounds to discover weapons which might be used to assault the officer. State v. Coleman, 10 Neb.App. 337, 630 N.W.2d 686 (2001); State v. Gutierrez, supra. In determining whether an officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that is given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of his or her experience. State v. Ellington, 242 Neb. 554, 495 N.W.2d 915 (1993); State v. Coleman, supra. Whether a police officer has *122 a reasonable suspicion based on sufficient articulable facts requires taking into account the totality of the circumstances. State v. Ellington, supra; State v. Coleman, supra.
The law is well settled in Nebraska that, as part of the totality of the circumstances, a court can consider an officer's knowledge of the defendant's drug-related criminal history. See, State v. Draganescu, 276 Neb. 448, 755 N.W.2d 57 (2008); State v. Lee, 265 Neb. 663, 658 N.W.2d 669 (2003). However, we have not directly considered whether an officer's knowledge of another passenger's drug- or weapon-related criminal history may be considered as part of the totality of the circumstances justifying a pat-down search of the defendant. In State v. Coleman, supra, we did cite with approval to U.S. v. Menard, 898 F.Supp. 1317 (N.D.Iowa 1995), which was subsequently affirmed by the Eighth Circuit at U.S. v. Menard, 95 F.3d 9 (8th Cir.1996). The Eighth Circuit held that, in considering the totality of the circumstances of whether reasonable suspicion existed to pat down a back seat passenger, the trial court could consider an officer's reminder to a fellow officer of the "`Officer Safety Warning'" posted at the police department which specifically stated the front seat passenger was believed to be armed with an automatic pistol. U.S. v. Menard, 95 F.3d at 10.
Other courts have likewise held that a fellow passenger's criminal history is a valid factor to be considered as part of the totality of the circumstances in assessing reasonable suspicion. See, U.S. v. Mathurin, 561 F.3d 170 (3d Cir.2009) (defendant acknowledged that codefendant's criminal history, involving arrests for possession of drugs, aggravated assault, and another arrest resulting in seizure of large sums of cash from his person, was valid factor for court to consider, under totality of circumstances, when it assessed reasonable suspicion that defendant had been engaged in criminal activity); United States v. Sprinkle, 106 F.3d 613 (1997) (fellow passenger's previous criminal record was factor to be considered in totality of circumstances to support reasonable suspicion of criminal activity); State v. Malone, 274 Wis.2d 540, 683 N.W.2d 1 (2004) (fellow passenger's volunteered statement that he was on probation for drug-related offenses was properly considered in totality of circumstances analysis regarding whether trooper had reasonable suspicion that occupants of vehicle, including defendant, were involved in illegal conduct involving narcotics); Powell v. State, 5 S.W.3d 369 (Tex.App.1999) (fellow passenger's prior drug possession offense was factor considered in determining whether defendant's postcitation detention was reasonable). Cf., State v. Jones, 179 N.J. 377, 846 A.2d 569 (2004) (accomplice's drug convictions were factor that could be considered in totality of circumstances for probable cause to issue search warrant of residence and its occupants); State v. Gray, 307 Mont. 124, 38 P.3d 775 (2001) (criminal history of defendant's brother, involving illegal drugs, was one factor that could be considered in totality of circumstances for probable cause to issue search warrant).
We agree that a fellow passenger's criminal history is a valid factor to be considered as part of the totality of the circumstances in assessing reasonable suspicion, especially since the relationship between the occupants of a house or a car differs from that of persons in a public place. See U.S. v. Menard, supra. Therefore, we hold that a fellow passenger's prior drug, weapon, or criminal history may properly be considered in the totality of the circumstances of whether reasonable suspicion existed to conduct a pat-down search of a defendant for weapons. *123 Thus, Keiper's knowledge of Pacheco's weapons conviction and implication in drug distribution was within the totality of the circumstances that could be considered in determining whether reasonable suspicion existed to support a pat-down search of Vasquez-Arenivar for weapons.
Prior to conducting the pat-down search of Vasquez-Arenivar, Keiper knew that the stopped vehicle had darkly tinted windows. Then, when asked about drugs and firearms, Vasquez-Arenivar looked away and delayed his responses, and the issue arose of whether Vasquez-Arenivar could understand Keiper's questions, even though Vasquez-Arenivar could converse in English immediately prior. Keiper also noticed a large bulge in Vasquez-Arenivar's left front pocket, and Keiper knew that Pacheco had been implicated in the distribution of methamphetamine and had been convicted on firearm charges. Based upon the totality of these circumstances, Keiper had reasonable suspicion based on articulable facts to justify a pat-down search of Vasquez-Arenivar for weapons. Although the pat-down search of Vasquez-Arenivar for officer safety was constitutional, officers did not seize, and could not have seized, the suspected drugs on Vasquez-Arenivar's person during the pat-down search for weapons; the drugs were recovered on the ground by officers after Vasquez-Arenivar abandoned the bag.
This court has considered whether drugs which are abandoned by a defendant may be lawfully recovered. In State v. Cronin, 2 Neb.App. 368, 509 N.W.2d 673 (1993), the defendant was being chased by the police when he discarded a bag of cocaine which the police recovered and used as a basis for a criminal charge. The issue presented in that case was whether the defendant was illegally seized prior to discarding the drugs he was carrying. We concluded that the defendant was not seized before he discarded the drugs and found that drugs which are abandoned by a defendant prior to being seized by law enforcement may be lawfully recovered. See id.
The instant case presents a different factual situation in that Vasquez-Arenivar was legally seized prior to his abandonment of the drugs on the side of a public street. However, we do not consider this distinction to be determinative. Other courts have upheld a defendant's voluntary abandonment of property after the defendant's lawful seizure by law enforcement. For example, abandonment has been found in the following situations: where a defendant discarded drugs on the hood of a police cruiser after a lawful investigatory stop and just before officers were about to conduct a lawful frisk, State v. Sam, 988 So.2d 765 (La.App.2008); where, after his lawful arrest, a defendant dropped drugs in the presence of an officer, State v. Mitchell, 722 So.2d 814 (Ala.Crim.App.1998); where a defendant tossed drugs to the floor while officers were lawfully searching his mouth for contraband, State v. Dupree, 319 S.C. 454, 462 S.E.2d 279 (1995); where a defendant threw a pouch containing crack cocaine over a fence following his legal arrest, State v. Bumpus, 459 N.W.2d 619 (Iowa 1990); where a defendant abandoned drugs by dropping them out the window of the vehicle on the roadside of a public street after the lawful stop of vehicle in which he was a passenger, Morrison v. State, 71 S.W.3d 821 (Tex.App.2002); and where a defendant dropped cocaine during a valid investigatory stop, State v. Abdullah, 730 A.2d 1074 (R.I.1999).
When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might otherwise have had. U.S. v. Thomas, 864 F.2d 843 (D.C.Cir.1989); U.S. v. Jones, 707 *124 F.2d 1169 (10th Cir.1983). The Fourth Amendment does not protect property that has been voluntarily abandoned. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); State v. Grant, 614 N.W.2d 848 (Iowa App.2000). Thus, a warrantless search or seizure of abandoned property does not violate the Fourth Amendment. U.S. v. Thomas, supra. Thus, we hold that when a defendant has been legally detained prior to voluntarily abandoning drugs or other property, the drugs or property may be lawfully recovered.
Since Vasquez-Arenivar was legally detained prior to discarding the drugs, he voluntarily abandoned the bag of drugs, thereby forfeiting any expectation of privacy that he may have had in it, and the resulting seizure and search of the bag did not violate the Fourth Amendment.

Tampering With Physical Evidence Conviction.
Although the district court properly denied Vasquez-Arenivar's motion to suppress, the State confessed at oral arguments, and our review of the record confirms, that the evidence is insufficient to support Vasquez-Arenivar's conviction for tampering with physical evidence as a matter of law. Vasquez-Arenivar was convicted by a jury of tampering with physical evidence. This means that the jury determined that Vasquez-Arenivar, believing that an official proceeding was pending or about to be instituted and acting without legal right or authority, destroyed, mutilated, concealed, removed, or altered physical evidence with the intent to impair its verity or availability in the pending or prospective official proceeding. See Neb.Rev. Stat. § 28-922(1)(a) (Reissue 2008).
During the pendency of this appeal, the Nebraska Supreme Court decided State v. Lasu, 278 Neb. 180, 768 N.W.2d 447 (2009), wherein the court considered whether an individual commits the offense of tampering with physical evidence if he discards contraband without making an active attempt to conceal or destroy it. In Lasu, the defendant, in the vicinity of a police officer, threw a bag of marijuana into a large cardboard bin of snack foods, where it landed on top and was likely to be discovered. The defendant did not remove the drugs from the scene of the possessory offense or attempt to conceal the bag and actually placed the evidence where it was quite likely to be discovered, even if he hoped that the drugs might be less associated with him.
In considering the issue of whether the defendant in Lasu had committed the offense of tampering with evidence, the Nebraska Supreme Court noted that other courts had drawn a distinction between concealing evidence and merely abandoning it and that those courts that had considered "effectively identical statutory language... uniformly concluded that when a defendant merely drops, throws down, or abandons evidence in the presence of law enforcement, such conduct will not sustain a conviction for tampering with physical evidence." 278 Neb. at 184, 768 N.W.2d at 451. The court declined to extend the language of Nebraska's tampering with physical evidence statute regarding concealing or removing physical evidence to cover circumstances where the evidence at issue was made more apparent, not less, holding that the offense "does not include mere abandonment of physical evidence in the presence of law enforcement." Id. at 185, 768 N.W.2d at 451. See § 28-922(1)(a).
Applying the dictates set forth in State v. Lasu, supra, to the instant case, we find similar facts presented. The evidence in support of Vasquez-Arenivar's conviction is that he discarded a Ziploc bag containing methamphetamine on the ground with *125 several police officers in close proximity. There is no question that Vasquez-Arenivar was without legal right or authority to dispose of physical evidence and that the methamphetamine was physical evidence within the meaning of § 28-922(1)(a). There also is no question that Vasquez-Arenivar did not destroy, mutilate, or alter the evidence when he discarded it, or otherwise do anything that would affect the veracity of the evidence. Like the defendant in Lasu, Vasquez-Arenivar "may have abandoned physical evidence, intending to prevent it from being found on his personbut he neither concealed nor removed it from the scene of the crime, nor did he do anything that would prevent its recovery." 278 Neb. at 186, 768 N.W.2d at 452.
Therefore, the evidence is insufficient, as a matter of law, to support Vasquez-Arenivar's conviction for tampering with physical evidence. When the evidence adduced at trial is legally insufficient to sustain the conviction, a criminal charge may not be retried, but must be dismissed. State v. Garza, 256 Neb. 752, 592 N.W.2d 485 (1999); State v. Jimenez, 248 Neb. 255, 533 N.W.2d 913 (1995). Consequently, we vacate Vasquez-Arenivar's conviction and sentence for tampering with physical evidence.

CONCLUSION
We find that the district court properly denied Vasquez-Arenivar's motion to suppress; however, the evidence was insufficient, as a matter of law, to support his conviction for tampering with physical evidence. Therefore, we affirm Vasquez-Arenivar's conviction and sentence for possession of a controlled substance with the intent to deliver, and we vacate his conviction and sentence for tampering with physical evidence.
AFFIRMED IN PART, AND IN PART VACATED.