IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. TAPIA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MANUEL TAPIA, APPELLANT.

Filed February 3, 2015.    No. A-13-1079.

Appeal from the District Court for Scotts Bluff County: LEO DOBROVOLNY, Judge. Affirmed as modified.

Leonard G. Tabor for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Manuel Tapia appeals from his conviction in the district court for Scotts Bluff County for possession of cocaine with intent to distribute and possession of marijuana. On appeal, Tapia assigns error to the denial of his motion to suppress and motion for continuance and appointment of new counsel. He also asserts that he received ineffective assistance of counsel, that the evidence was insufficient to convict him, and that the court imposed an excessive sentence. For the reasons that follow, we affirm as modified.

## BACKGROUND

On May 23, 2013, the State filed an information in the district court charging Tapia with distribution of marijuana in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 2012), a

- 1 -

Class III felony, and possession of cocaine with intent to distribute, not less than 10 grams and not more than 27 grams, in violation of § 28-416(7)(c), a Class ID felony.

On September 9, 2013, Tapia filed a motion to suppress evidence. Specifically, he sought suppression of evidence seized by Officers Aaron Kleensang and Matthew Dodge of the Scottsbluff Police Department, resulting from their search and seizure of evidence "from Tapia's person and the vehicle in which he was seated on April 27, 2013." Tapia alleged that the officers did not have a valid warrant, no consent was given by Tapia and the other occupants of the vehicle, and the officers lacked any probable cause to seize the items in question.

Kleensang and Dodge testified at the suppression hearing held before the district court on September 24, 2013. Kleensang testified that on April 27, he was dispatched to a particular address at about 12:45 a.m. in response to a complaint regarding possible drug use in the parking lot behind the residence at that address. Dispatch advised that a small gray car parked behind the residence was occupied by several people believed to be engaged in illegal activity involving drug use. Dodge also responded to the dispatch and approached the parking lot from one side of the residence, while Kleensang approached from the other side. By the time Kleensang reached the southeast corner of the residence, he could smell "the very pungent odor of burnt marijuana." In the parking lot, Kleensang observed a gray Chevy Malibu occupied by three people. The front passenger side window of the car, which faced Kleensang, was rolled down. Kleensang did not see any other vehicles with occupants in the parking lot at the time. Kleensang approached the front passenger side window, made contact with Tapia who was seated in the front passenger seat, and advised him to step out of the car.

Dodge testified that as he approached the area where the car was parked, he smelled marijuana "in whiffs, not consistently." He stopped to sniff at the open window of the building he was walking along, but did not detect marijuana odor from the building. When Dodge reached the parking lot, he contacted the driver of the car, Tiffanee Garnier, and the rear passenger, Felicia Gorden, while Kleensang dealt with Tapia. Dodge testified that upon his contact with Garnier, the odor of marijuana became consistent.

Similarly, when Kleensang contacted Tapia, he detected the distinct, very pungent odor of burned marijuana from the car's interior. As Tapia stepped out of the car, he immediately put his hands in his pockets, which caused Kleensang concerns for officer safety. Kleensang told Tapia to take his hands out of his pockets and conducted a brief pat down of Tapia. During the pat down, Kleensang found a pocketknife clipped to Tapia's rights pants pocket and detected a bulge in the other pocket with "the feeling of a sandwich bag and a semi-solid object" that Kleensang believed to be contraband or marijuana. Kleensang then removed from Tapia's pocket a clear plastic wrapping containing what Kleensang believed, based on its green leafy appearance and distinctive odor, to be a significant quantity of marijuana. This substance was later weighed and determined to be 3.4 ounces of marijuana.

After Kleensang discovered the marijuana in Tapia's pocket, Kleensang and Dodge searched the Malibu, and they found a small digital scale with "loose green leafy substance" that Kleensang believed to be marijuana in the front passenger side door pocket and a small quantity of marijuana in the center console. The marijuana located in the console weighed 5.4 grams.

At some point, a police sergeant arrived, spoke to someone who had arrived in another car, and "cleared" the occupant or occupants of that vehicle by verifying that they did not have a

warrant for their arrest. Prior to the arrival of this vehicle, Dodge did not recall seeing any other vehicles pull into the parking lot or anyone else walking around the area.

While Kleensang was taking Tapia to the police car, Dodge walked around the front of the Malibu and found two large cellophane sacks on the ground approximately five feet from the passenger side of the car's front bumper. Dodge initially thought they were wadded up deli sandwich wrappers, but when he picked one up, he felt that there was a weighty substance in it. Dodge used his flashlight to inspect the cellophane further and could see a white powdery substance inside. Dodge had not seen the cellophane before noticing it on the ground and did not know how it got there. Based on the powder's appearance, Dodge believed it was cocaine, which belief was confirmed with later testing. Both of the cellophane packages contained cocaine, and one of the packages was bundled into smaller "corner baggies."

Tapia called Gorden as a witness at the suppression hearing. On the evening in question, she was waiting at a friend's apartment for Garnier and Tapia to pick her up. When Tapia and Garnier arrived, Gorden went to the parking lot in question and sat in the back seat of their car. According to Gorden, while they were sitting in the car, a white Corvette entered the parking lot and parked next to them on the driver's side. Gorden did not recognize the car or its occupants. She testified that they got out of the Corvette and walked between two apartment buildings and disappeared from view. Gorden denied that anyone in the Malibu was smoking marijuana. According to Gorden, the friend she was visiting in the apartment was involved in an ongoing child custody dispute. One of the other individuals involved in the custody dispute lived in a building next to the parking lot in question and was the person who called police with the report about marijuana being smoked in the parking lot.

Kleensang was recalled after Gorden testified. According to Kleensang, if anyone had been walking where Gorden stated the people from the white Corvette had walked, he would have met them as he approached the parking lot. Kleensang did not recall seeing a white Corvette in the parking lot and testified that he would have remembered seeing such a vehicle.

The district court denied the motion to suppress from the bench, finding that there was more than ample evidence to show that the police officers clearly had reasonable suspicion to investigate and that the investigation led to probable cause to support the search.

Although the cocaine found on the ground was not included in Tapia's suppression motion, the court made findings regarding the cocaine. Specifically, the court noted that there may be some credibility issues, but that it would be for the jury to decide whether Tapia was in possession of the bags of cocaine or whether they were dropped by someone from the white Corvette. The court specifically found that Gorden's testimony as to the white Corvette and the persons in it was not credible.

On October 15, 2013, prior to the start of trial, Tapia orally made a motion to continue trial. His counsel also presented the district court with a written, but not yet filed, motion to continue along with an affidavit of his counsel's recollection and understanding of "the problems that we have incurred in our case at this point." The motion and affidavit were subsequently filed with the court on October 18. In the affidavit, Tapia's attorney discussed Tapia's concern about trial preparedness and Tapia's apparent belief that although jury selection would begin on October 15, the evidentiary portion of the trial would be scheduled for a later time. The court heard argument from the parties with respect to the motion to continue.

The district court also gave Tapia an opportunity to express his concerns. Tapia presented the court with a letter which was received into evidence. In the letter, Tapia expressed his concerns about communications with his attorney and trial preparedness and asked the court to appoint him a new attorney. Tapia also presented verbal argument to the court in support of his position.

The district court stated that it would consider Tapia's letter as a motion to appoint alternate counsel and denied both the motion to continue and the motion to appoint alternate counsel.

A jury trial was held on October 15 and 16, 2013. The court received various exhibits into evidence including photographs of the marijuana found in Tapia's pocket, the digital scale and marijuana found in the car, and the cocaine packages.

Kleensang and Dodge both testified at trial, and their trial testimony was consistent with the testimony they gave at the suppression hearing. For the sake of brevity, we have not repeated their trial testimony here, except to note that Kleensang testified that 3.44 ounces of marijuana with packaging was removed from Tapia's person and 5.4 grams of marijuana with packaging was located in the car console. During Kleensang's testimony at trial, Tapia's counsel renewed his objections to "any evidence obtained from this point on having been taken from [Tapia] in violation of his [Constitutional] rights" and asked for a continuing objection. The district court overruled Tapia's objections, but noted them as continuing.

Jerry Smith, a forensic chemist with Eastern Nebraska Forensic Lab, tested the white powdery substance found in the bags located on the ground in front of the car for the presence of a controlled substance. Smith has a degree in chemistry from Creighton, has attended the Drug Enforcement Agency's forensic training classes and methamphetamine laboratory training, and has been trained on the specific instruments he uses in the lab. Smith has been employed as a forensic chemist since 1996. According to Smith, Eastern Nebraska Forensic Lab is a private laboratory owned by him and two other individuals. Smith described the instruments he uses in testing and his training to use those instruments. Eastern Nebraska is not an accredited laboratory, but Smith stated that they periodically send out samples to be rechecked by other labs and that they sometimes check the results obtained by other labs, including the State Patrol Crime Lab. Eastern Nebraska often does forensic work for the Omaha Police Department and other law enforcement departments in the area. Smith described the testing process used and procedures followed in great detail. One of the packages tested by Smith contained 10.9 grams of 90% cocaine hydrochloride cut with inositol. Smith also tested the group of smaller "corner baggies," which all tested positive for cocaine with the following weights and purity levels: .6 grams at 90%, 1.1 grams at 20%, .7 grams at 90%, 1.1 grams at 20%, .7 grams at 90%, .6 grams at 90%, 1 gram at 20%, 1.1 grams at 20%, and .9 grams at 20%. The cutting agent in the smaller packages was also inositol.

Joe Choquette is the DNA analyst who tested DNA samples taken from the cocaine bags and Tapia in this case. Choquette is employed by the University of Nebraska Medical Center's Human DNA Identification Laboratory and is responsible for all the technical duties of the lab, overseeing review of other DNA analysts, and ensuring that all accreditation standards are followed. Choquette has a Bachelor's of biology degree and a Master's of forensic science degree. He has worked in various laboratories performing DNA testing since 1995 and has been

- 4 -

doing forensic testing since 2005. Choquette described his training, the lab's accreditation, and the testing process he used in great detail. Choquette tested a knot from the larger package of the cocaine found by the bumper of the car and a knot cut from one of the smaller baggies of cocaine and a buccal swab taken from Tapia. Choquette obtained a DNA profile from the knot taken from the larger bag, but he was unable to generate a profile from the smaller bag tested. The DNA profile on the larger bag was a mixture of at least two contributors, from which Choquette was able to identify a major profile contributor. Choquette compared the major profile to the reference sample taken from Tapia and found that the known sample could not be excluded as a major DNA profile contributor. According to Choquette, the chance that someone other than Tapia would be a contributor to the major profile is 1 in 12.6 billion for Caucasians, 1 in 105 billion for African Americans, and 1 in 11 billion for American Hispanics.

Gorden testified on Tapia's behalf, and her trial testimony was consistent with her testimony at the suppression hearing. She denied that anyone in the car was smoking marijuana. She denied any knowledge of drugs in or being thrown from the car on the evening in question. She again described seeing a white Corvette enter the parking lot and occupants of the Corvette walking in front of the Malibu. According to Gorden, a party was taking place in a nearby residence and lots of people were coming in and out.

Garnier also testified at trial. She denied that anyone was smoking marijuana in the car, noted other people in the parking lot, and denied knowledge of the cocaine located by police officers. She noted one particular individual in the parking lot who had funny looking hair and acted like he was trying to hide. According to Garnier, this individual approached the car when she and Tapia first pulled into the parking lot. Garnier claimed the marijuana in the console was hers.

Tapia testified on his own behalf. His description of events was similar to Gorden's and Garnier's. He denied placing his hands in his pockets when he exited the car. Tapia claimed that he used the digital scale found in the car to divide and ration marijuana for his personal use. He testified that he smoked some marijuana earlier in the day while walking around. Tapia claimed that he purchased the marijuana in Scottsbluff and denied that he and Garnier came from Denver to Scottsbluff to sell drugs. He denied that they brought any cocaine or other drugs with them from Denver or that he had "any dealings with any cocaine" once in Nebraska as he does not "do any heavy drugs."

Gorden's friend testified that there are always a lot of people in the parking lot next to her apartment, and she thought that there was a party taking place at a neighbor's house on the evening in question. She confirmed that she was involved in an ongoing custody dispute and that other individuals involved in the dispute lived in the same apartment complex as she did. Gorden's friend went down to the parking lot with Gorden and noticed Tapia sitting in the car. According to her, he was just sitting there, not doing anything of concern. She denied seeing Tapia throw anything when looking out her apartment window or while in the parking lot.

The jury found Tapia guilty of possession of marijuana, more than one ounce but less than one pound, and possession of cocaine with intent to distribute, at least 10 grams but less than 28 grams. The district court accepted the jury's verdict, ordered a presentence report, and set sentencing for December 6, 2013.

Tapia filed a motion to continue the sentencing hearing, which was denied by the district court. Following the sentencing hearing, held on December 6, 2013 as originally scheduled, the court entered an order sentencing Tapia to imprisonment for a period of 90 days for the possession of marijuana charge and to a consecutive period of 5 to 10 years for the possession with intent to distribute cocaine charge. The court gave Tapia 224 days of credit on the second sentence for time served before sentencing. Tapia subsequently perfected his appeal to this court.

ASSIGNMENTS OF ERROR

Tapia asserts that (1) the district court erred in denying his motion to suppress, (2) he received ineffective assistance of trial counsel, (3) the court erred denying his motion for continuance and appointment of new counsel, (4) the evidence was insufficient for the jury to find him guilty, and (5) the court abused its discretion by imposing an excessive sentence.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id.* The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Dalland*, 287 Neb. 231, 842 N.W.2d 92 (2014).

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Banks*, 289 Neb. 600, 856 N.W.2d 305 (2014). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Banks, supra*.

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Ash*, 286 Neb. 681, 838 N.W.2d 273 (2013). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014).

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Tolbert*, 288 Neb. 732, 851 N.W.2d 74 (2014).

ANALYSIS

*Motion to Suppress.*

Tapia asserts that the district court erred in denying his motion to suppress. In his motion, he sought suppression of evidence resulting from Kleensang and Dodge's search and seizure of evidence "from [Tapia's] person and the vehicle in which he was seated" on the evening in question.

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014). We note initially that although the court addressed the bags of cocaine found in front of the car in its ruling on Tapia's motion, the motion only sought suppression of evidence seized from Tapia's person and the vehicle in which he was seated. The State argues that because no one claimed possession or knowledge of the cocaine bags, they were abandoned property and that Tapia had no standing to contest seizure of the bags. Drugs which are abandoned by a defendant prior to being seized by law enforcement may be lawfully recovered. *State v. Vasquez-Arenivar*, 18 Neb. App. 265, 779 N.W.2d 117 (2010). When individuals voluntarily abandon property, they forfeit any expectation of privacy in the property that they might otherwise have had. *Id.* The Fourth Amendment does not protect voluntarily abandoned property. *Id.* Regardless of whether the cocaine bags are considered abandoned property in this case, they were not covered by Tapia's motion to suppress, and we do not address them further.

Tapia's suppression motion related to the marijuana found on his person and in the vehicle. In our review, we find that the record supports the district court's finding that the officers had reasonable suspicion to investigate and that the investigation led to probable cause to support the search. Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013). Under the Fourth Amendment, a policeman who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion. *Id.*

Kleensang and Dodge were dispatched to a particular address to investigate a report of people in a gray car in the parking lot engaged in drug activity. As they approached the area, they could smell burning marijuana, and the odor became stronger the closer they were to the parking lot and the Malibu. Dodge also sniffed at an open apartment window and was unable to detect the odor coming from that location. There were no other cars in the parking lot with people in them when the officers arrived. At that point, the officers had reasonable suspicion that criminal activity was afoot.

When Kleensang asked Tapia to step out of the car, he placed his hands in his pockets, and Kleensang conducted a pat down search based on officer safety concerns, which led to the discovery of marijuana on Tapia's person. In addition to an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), an officer is entitled, for the protection of himself or herself and others in the area, to conduct a carefully limited search of the outer clothing of persons stopped on *Terry* grounds to discover weapons which might be used to assault the officer. *State v. Vasquez-Arenivar*, 18 Neb. App. 265, 779 N.W.2d 117 (2010). Under the circumstances of this case, it was lawful for Kleensang to conduct the pat down search of Tapia.

Following the discovery of marijuana in Tapia's pocket, the officers searched the car and found the digital scale and marijuana in the center console. A warrantless search of a vehicle is permissible upon probable cause that the automobile contains contraband. *State v. Beal*, 21 Neb. App. 939, 846 N.W.2d 282 (2014). A law enforcement officer has probable cause to search when it is objectively reasonable. *Id.* A search is objectively reasonable when known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that he will find contraband or evidence of a crime. *Id.* Probable cause depends on the totality of the circumstances. *Id.*

In this case, Kleensang and Dodge had probable cause to search the vehicle. The strong odor of marijuana emanating from the vehicle and the discovery of marijuana in Tapia's pocket following the lawful pat down search were sufficient to warrant a belief by the officers that they would find contraband or evidence of a crime.

Because there was sufficient reasonable suspicion to search Tapia's person and probable cause to support searching the vehicle, the district court did not err in failing to suppress the evidence derived from these searches. This assignment of error is without merit.

*Ineffective Assistance of Counsel.*

Tapia asserts that he received ineffective assistance of trial counsel. Tapia argues that his counsel was ineffective in five different respects, and we address each of these arguments separately below.

The trial record reviewed on appeal is devoted to issues of guilt or innocence and, as such, does not usually address issues of counsel's performance. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.* In the case of an argument presented for the purpose of avoiding procedural bar to a future postconviction action, appellate counsel must present the claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.*

Tapia first asserts, "Defense counsel failed to subpoena the citizen informant who originally called the police and other witnesses, even though the defendant requested defense

counsel do so." Brief for appellant at 38. Tapia presents no further argument in support of this assertion.

The record shows that Andy Palomo called the police and reported possible illegal drug activity by occupants in a gray car in the parking lot. Tapia filed a motion for deposition of Palomo, which was granted by the district court on September 9, 2013. The record does not show whether this deposition was in fact taken, and if so, what Palomo said. Although Tapia has not identified what he thought Palomo would testify to, he does suggest that Palomo may have had a questionable motive and may have possibly fabricated the report. We find that this portion of his claim has been preserved for later postconviction review. However, Tapia's assertion that his counsel failed to subpoena "other witnesses" without any further allegations is insufficient to preserve this issue for further review.

Second, Tapia asserts, "Defense counsel failed to object to the testimony of [Choquette] and [Smith]. Their entire testimony should have been objected to for lack of foundation and that they were improperly qualified as expert witnesses." Brief for appellant at 38. Tapia presents no further argument in support of this claim. He does not identify what foundation he thinks was lacking for either of these witnesses' testimony.

An expert's opinion is ordinarily admissible under Neb. Rev. Stat. § 27-702 (Reissue 2008) if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination. *Village of Hallam v. L.G. Barcus & Sons, Inc.*, 281 Neb. 516, 798 N.W.2d 109 (2011). It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his opinion about an issue in question. *Id.*

We have set forth Choquette and Smith's training and qualifications in the background section above and find that the record shows that they were more than adequately qualified to perform the testing conducted in this case. Their opinions were helpful to the trier of fact since the evidence they tested showed that the powder in the bags recovered from the ground in front of the car was cocaine and that Tapia left his DNA on one of the bags. They discussed their training, testing methods, and results at length during both direct and cross-examination. The record shows no foundational basis for objecting to their testimony. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Thoi Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010).

Next, Tapia asserts, "Exhibit 29 is a letter from defendant to the District Judge explaining his reasons for requesting new counsel. Again, his stated reasons were valid." Brief for appellant at 39. Tapia presents no further argument in support of this assertion. This assertion is not really an ineffective assistance of counsel claim. Tapia is merely reasserting his third assignment of error. As we address that assignment of error below, we do not address it further in the context of Tapia's ineffective assistance of counsel assignment of error.

Next, Tapia asserts, "The defense attorney did not make a Motion for Directed Verdict at the end of the [State's] case or at any other time." Brief for appellant at 39. Tapia does not present any further argument in support of this assertion.

In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be

sustained. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.* As discussed more fully below, there was sufficient evidence in the record to support Tapia's convictions. We do not discuss that evidence further here except to note that given that the evidence was sufficient to support Tapia's convictions, it was sufficient to have overcome a motion for directed verdict. This claim of ineffective assistance of counsel is without merit.

Finally, Tapia asserts, "Defendant failed to object to certain exhibits offered and received at trial." Brief for appellant at 39. Tapia does not present any further argument in support of this assertion, which, as worded, does not specifically reference any action on the part of his attorney. Although he references "certain exhibits," he does not identify to which of the many exhibits received at trial he is referring. This assertion is conclusory, vague, and insufficient to preserve this issue for later postconviction review.

In conclusion, Tapia has preserved only his claim that counsel was ineffective for not calling Paloma for postconviction review. His other assertions are either not ineffective assistance assertions, have no merit, or are too vague and conclusory to be preserved for postconviction review.

*Motion for Continuance*.

Tapia asserts that the district court erred in denying his motion for continuance and appointment of new counsel. Tapia notes that there were motions to continue trial, to appoint new counsel, and to continue sentencing, all of which were denied by the court. Tapia's sole argument in support of this assignment of error is as follows, "The reasons given by defendant and his counsel were valid reasons for the request for continuance and for the appointment of new counsel. The court abused its discretion in denying those motions."

With respect to the motion to continue trial, the court considered the concerns raised in the affidavit from Tapia's attorney and in Tapia's letter, and Tapia's apparent belief that the evidentiary portion of the trial would take place at a later date from the jury selection. In denying this motion, the court noted that the trial date had been set for some time and had never been scheduled for the later date as suggested.

With respect to the motion to continue sentencing, Tapia's counsel indicated that Tapia wished to continue the sentencing date for 3 to 4 weeks to allow family members from Colorado to visit him prior to sentencing. His counsel noted financial issues that would make it more difficult for Tapia's family to visit after he was transferred to the custody of the Department of Corrections. The State objected on the basis that the reasons given did not amount to a showing of good cause to continue sentencing.

Finally, Tapia's letter indicates that he wanted a new attorney because he felt his current counsel was working against him and not representing him to the best of his abilities. An indigent defendant's right to have counsel does not give the defendant the right to choose his or her own counsel. *State v. Wabashaw*, 274 Neb. 394, 740 N.W.2d 583 (2007). Mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel. *Id.*

Beyond stating that the reasons given by Tapia and his counsel were valid reasons for granting these motions, Tapia does not explain how the court abused its discretion in denying these motions. An argument that does little more than to restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). Accordingly, we do not address this assignment of error further.

*Sufficiency of the Evidence*.

Tapia asserts that the evidence was insufficient for the jury to find him guilty. Tapia was convicted under § 28-416 of possession of marijuana, more than one ounce but less than one pound, and possession of cocaine with intent to distribute, at least 10 grams but less than 28 grams.

In support of this assignment of error, Tapia points to conflicting evidence and argues that contradictory evidence should be resolved in favor of the defendant. We disagree. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014). Viewing the evidence most favorably to the State, as we must, the evidence shows that marijuana was found in Tapia's pocket and in the car console next to where he was seated in the car. Two bags of cocaine, some of which was bundled into smaller corner baggies, were found on the ground in front of the passenger side front bumper of the car. Tapia's DNA was found on one of the bags. There was sufficient evidence to support the jury's verdict. This assignment of error is without merit.

*Excessive Sentence*.

Tapia asserts that the district court abused its discretion by imposing an excessive sentence. Tapia was convicted of possession of marijuana, more than one ounce but less than one pound, which is a Class III misdemeanor, punishable by a maximum of 3 months in prison, a $500 fine, or both. § 28-416(11); Neb. Rev. Stat. 28-106(1) (Cum. Supp. 2012). He was also convicted of possession of cocaine with intent to distribute, at least 10 grams but less than 28 grams, a Class ID felony, punishable by a maximum of 50 years in prison, and a mandatory minimum of 3 years in prison. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012).

Imposing a sentence within statutory limits is a matter entrusted to the discretion of the trial court. *State v. Tolbert*, 288 Neb. 732, 851 N.W.2d 74 (2014). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id.* In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors. *State v. Sikes*, 286 Neb. 38, 834 N.W.2d 609 (2013). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts surrounding the defendant's life. *Id.*

We note, as did the State in its brief on appeal, that the district court's journal entry setting forth Tapia's sentences incorrectly states that Tapia was convicted of a Class III felony. Tapia was originally charged with possession with intent to distribute marijuana, which is a Class III felony, but the jury convicted him of the lesser charge of possession of at least an ounce but less than a pound of marijuana, which is a Class III misdemeanor. The district court acknowledged at the sentencing hearing that Tapia was convicted of the lesser offense on the marijuana charge. Despite the indication in the written sentencing order that the offense was a Class III felony offense, the district court sentenced Tapia for a Class III misdemeanor. The imposed sentence was properly within the limit for a Class III misdemeanor, and the court was clearly sentencing Tapia for a Class III misdemeanor, notwithstanding the clerical error referencing a Class III felony offense in the written sentencing order. We therefore modify the sentencing order to reflect that Tapia was convicted of the Class III misdemeanor offense of possession of marijuana of at least an ounce but less than a pound, and not a Class III felony offense.

The State also asserts that Tapia was sentenced incorrectly on this count, in that he was sentenced to "90 days," while Neb. Rev. Stat. § 28-106(1) provides that a Class III misdemeanor is punishable by imprisonment for a maximum of "three months." The State observes that the Nebraska Supreme Court has held that in the speedy trial context, the requirement that a defendant be brought to trial within 6 months of the filing of the information refers to 6 calendar months, not 180 days. See *State v. Jones*, 208 Neb. 641, 305 N.W.2d 355 (1981). See, also, Neb. Rev. Stat. § 49-801(13) (Reissue 2010) ("[m]onth shall mean calendar month"); *State v. Contreras*, 236 Neb. 455, 461 N.W.2d 562 (1990) (revocation of operator's license for 365 days will not always fulfill requirement revocation for period of 1 year and revocation for 180 days does not fulfill requirement that revocation be for period of 6 months). We disagree with the State's contention in this regard. The calculation of time in the context of the speedy trial statute and license revocations are for the purpose of determining an exact amount of required time. On the other hand, reviewing a sentence is for the purpose of determining whether it is within the statutory maximum. In this case, the 90-day sentence imposed on December 6, 2013, is within the maximum sentence of 3 months for a Class III misdemeanor.

With respect to Tapia's felony cocaine conviction, the district court sentenced him to imprisonment for 5 to 10 years, which is well within the statutory requirements for a Class ID felony, and falls on the low end of the sentencing range. Tapia has prior drug convictions in 2005 and 2009 from Colorado. On the Level of Service/Case Management Inventory, Tapia scored in the high risk category for education/employment, leisure/recreation, and alcohol/drug problem and in the very high risk category for companions and pro-criminal attitude/orientation. The district court properly considered all of the necessary facts in sentencing Tapia, and we find no abuse of discretion in the sentences imposed. This assignment of error is without merit.

CONCLUSION

The district court did not err in denying Tapia's motion to suppress evidence obtained from the search of Tapia and the vehicle in which he was a passenger. Tapia has preserved his claim of ineffective assistance of counsel with regard to his allegation that trial counsel failed to subpoena Paloma, however, the record is insufficient to review this claim. We reject Tapia's

- 12 -

remaining claims of ineffective assistance of counsel, as they are either insufficient to preserve them for further review or are without merit. Tapia did not provide argument to support his assigned error with regard to the district court's denial of his motions for continuance and for new counsel. There was sufficient evidence to support Tapia's convictions and the district court did not abuse its discretion in sentencing Tapia. However, we modify the sentencing order to correct the scrivener's error to reflect that Tapia was convicted of a Class III misdemeanor as opposed to a Class III felony.

AFFIRMED AS MODIFIED.